UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CHARLENE THEILE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:06-CV-112 |
| | ) |
| THE FANEUIL GROUP, INC. and | ) |
| FANEUIL, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Charlene Theile ("plaintiff"), brought suit against the defendants, The Faneuil Group, Inc. and Faneuil, Inc. (collectively "defendant"), under Title VII, the Equal Pay Act, the Age Discrimination in Employment Act, and the Tennessee Human Rights Act, and for state law breach of contract. The defendant filed an Amended Motion for Summary Judgment, [Doc. 92], and the plaintiff responded. The matter is ripe for decision.

I. **FACTUAL BACKGROUND**

In viewing the facts in the light most favorable to the plaintiff, the

following sets forth the background of this dispute:[1]

The plaintiff began her employment with the defendant in 1997 as a client service manager and account executive. In 2001, she was promoted to the Business Development Team ("BDT") and given the title "Director of Business Development." She alleges that the male members of the BDT were given the titles of Vice-Presidents and paid higher salaries. In 2003, the plaintiff complained of the disparity to newly installed Senior Vice-President of Human Resources Sharon Hooper and to CEO Brian Cornick. The plaintiff alleges that Mr. Cornick stated he could not change the situation until Mark Leonard left the company. Mr. Leonard left the company, and in July 2003, the plaintiff was promoted to "Vice President of Business Development" and received a salary increase.

According to the plaintiff, during 2003 and 2004 she negotiated four contracts which produced $18,249,569.52 in revenues. She asserts that she was not a paid the commissions due on this amount, and as a result of her complaining of not receiving her commissions and complaining of age and gender discrimination, she was discharged in December 2004. The defendant asserts that the plaintiff's primary responsibility was the Verizon Communications account, and when Verizon let their

---

[1]This Court will set forth only the facts pertinent to this motion and not describe in detail all of the plaintiff's allegations.

contract with the defendant expire in December 2004, the plaintiff was laid off as part of a reduction in force on December 3, 2004.

As a result of her lay-off, the plaintiff was sent a Mutual Separation Agreement ("2004 Agreement") via electronic mail. The 2004 Agreement stated, "Provided you have executed and not rescinded the Release that is incorporated as part of this Agreement, you will receive a salary continuance . . . until January 28, 2005. The paragraph regarding the Release stated:

> In consideration of Faneuil's obligations and payment hereunder, you hereby fully and completely release and waive any and all claims, complaints, causes of action or demands of whatever kind which you have or may have against Faneuil and all its predecessors, successors, assigns, subsidiaries, officers, employees and agents (hereinafter referred to as "Faneuil") arising out of any action, conduct, decisions, behaviour or events occurring to the dat of your signature on this agreement, except as is set forth below, including, but not limited to, the terms, conditions and circumstances of your employment and your termination from Faneuil. . . .

It further stated, "By your signature below, you acknowledge that you fully understand and accept the terms of this agreement and you represent and agree that you signature is freely, voluntarily and knowingly given." It also stated, "You further understand that you have a right to rescind this agreement within seven (7) calendar days after the date of your signature below. To be effective, your rescission must be in writing and delivered to Faneuil in Care of Sharon Hooper . . . within the 21-

3

calendar day period." At the end of the document it again stated, "By your signature below, you acknowledge that you fully understand and accept the terms of this Agreement and you represent and agree that your signature is freely, voluntarily and knowingly given. If this letter accords with your understanding of our agreement, please sign both copies and return one to me."

The defendant contends that Ms. Hooper and the plaintiff discussed the terms of the 2004 Agreement and that plaintiff "made it abundantly clear to Ms. Hooper that she agreed with the terms." However, the plaintiff claims that she informed Ms. Hooper that she was going to consult an attorney about being laid off without being paid her commissions. After this consult, the plaintiff alleges that she informed Ms. Hooper that the 2004 Agreement was not valid and that she was not going to sign it. The defendants admit that the plaintiff never signed the 2004 Agreement. Nevertheless, the defendants made the periodic direct deposits into the plaintiff's bank account, and the plaintiff never told the defendants to stop depositing the money. Furthermore, the plaintiff showed the 2004 Agreement to the Tennessee Department of Employment Security as proof that she had been laid off.

Before providing all of the periodic payments, the defendant was awarded a contract by the Florida Department of Transportation ("FDOT"). The defendant offered the plaintiff re-employment as Vice President of Service Delivery,

4

and she returned to work in this position on February 28, 2005. The defendants agreed to pay the plaintiff's relocation expenses, and she moved to Orlando, Florida and began work. In July 2005, a representative of FDOT requested that the plaintiff be removed from her position, and on July 15, 2005, according to the plaintiff, the CEO Cornick telephoned the plaintiff and informed her that she was terminated. He also informed her that the defendant would pay relocation expenses to Tennessee, assume the lease on her Orlando apartment, and pay her salary until October 15, 2005. The plaintiff alleges that CEO Cornick did not condition such payments upon her signing a separation agreement.

In that regard, the plaintiff received another Mutual Separation Agreement ("2005 Agreement"), and it contained similar language to the 2004 Agreement. It provided a salary continuation until October 15, 2005, "[p]rovided [the plaintiff had] executed and not rescinded the Release." In addition, it contained clauses where the defendant assumed responsibility for the plaintiff's apartment lease, reimbursed the plaintiff for out-of-pocket expenses relating to the cancellation of a European vacation, and provided moving expenses to relocate to Tennessee. The release information was similar to the 2004 Agreement.

Again, the defendant claims that Ms. Hooper discussed the agreement with the plaintiff and that the plaintiff did not disagree with the terms. The plaintiff

5

again contends that she personally told Ms. Hooper that the defendant owed her commissions and that she was not going to sign the 2005 Agreement. The defendant admits that the plaintiff did not sign the 2005 Agreement. Nonetheless, the defendant made bi-weekly electronic deposits into the plaintiff's bank account, and plaintiff never instructed the defendant to stop making the payments.

On September 26, 2005, the plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission ("THRC"). In addition to listing the THRC on the form, it also listed the U.S. Equal Employment Opportunity Commission ("EEOC"), and the plaintiff checked the correct space to indicate that she was filing the charge with both the THRC and the EEOC. The plaintiff attached a detailed description of her allegations. On September 27, 2005, the EEOC stated in the Notice of Charge of Discrimination:

> This charge of discrimination is being transferred to the Miami District EEOC Office for processing, since the Charging Party worked in Orlando, Florida, which is in the geographical jurisdiction of the Miami District Office. You should be hearing from the Miami District EEOC Office in the near future. No further action on your part is required at this time. Please allow at least ten days for processing and mailing of the file before inquiring. . . .

The plaintiff contends that, at the request of the EEOC Miami Office, she submitted a second charge on October 23, 2005, to the Florida Human Rights Commission

6

("FHRC") and the EEOC.[2] The plaintiff reduced the details of her allegations in this charge. Regarding her prior employment in Tennessee, the allegations read as follows:

> . . . I was highly successful in growing the Verizon relationship. Even though I made the company millions of dollars, it discriminated against me both in promotions rank and salary and commission payments.
> On December 3, 2004, Faneuil discriminatorily and retaliatorily discharged me. Though the company went through a reduction in force, it kept a newly hired younger man who had not generated any revenue for the company as Vice-President of Business Development and laid me off. I believe my repeated objections to the company's disparate pay practices and sex discrimination and refusal to pay the commissions due me also motivated the company to lay me off and keep a newly hired young male Vice-President.

The Miami EEOC Office commenced its investigation for the relevant period of December 3, 2004 through July 15, 2005. On March 8, 2005, that office issued notice of plaintiff's right to file suit, and plaintiff did so on June 5, 2005.

II. **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, the discovery and

---

[2]In plaintiff's response to the defendant's motion for summary judgment, she states that plaintiff's counsel was telephoned by Melanie Jones of the Miami EEOC Office on October 5, 2005, and they discussed the charges which the Nashville Tennessee EEOC Office transferred. According to the plaintiff's response, Ms. Jones informed plaintiff's counsel that she would send the portion of charges which were alleged to have occurred in Tennessee to the Nashville EEOC Office for processing.

7

disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case

8

with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

III. **DISCUSSION**

The defendant moves for summary judgment on two grounds: (1) the plaintiff is estopped from asserting any claim against the defendant because she accepted consideration in exchange for a release of all claims according to the 2004 and 2005 Agreements, and (2) the plaintiff's Title VII claims are time-barred because the plaintiff failed to exhaust her administrative remedies. This Court will address

9

each issue in turn.

    A.    **EQUITABLE ESTOPPEL**

According to Tennessee law, equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (citing *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990)). Equitable estoppel also requires the following elements with respect to the party asserting estoppel:

> (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Id*.

Here, the defendant argues that it lacked the knowledge that plaintiff disagreed to the terms of the 2004 and 2005 Agreements. Plaintiff, to the contrary, asserts that she made the defendant aware, namely by telling the defendant's employee

Ms. Hooper, the she disagreed to the terms and refused to sign the Agreements. It is undisputed that after receiving both Agreements at separate times, money was electronically deposited into the plaintiff's account. In addition, the defendant claims that the plaintiff's actions indicated that she agreed to the Agreements.

Basically, the parties dispute whether the defendant had knowledge of the plaintiff's disagreement with the terms of the Agreements. In order to determine whether the plaintiff is equitably estopped from bringing her claims, this Court must determine whether the defendant had knowledge that the plaintiff disagreed with the terms of the Agreements. As such, viewing the facts in the light most favorable to the plaintiff, this Court FINDS that there is a genuine issue of material fact. Thus, it is hereby **ORDERED** that the defendant's motion for summary judgment on this issue is **DENIED**.

B. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiffs must typically file a timely discrimination charge with the EEOC in order to bring a Title VII lawsuit. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999), *cert. denied*, 528 U.S. 1154 (2000). Pursuant to the statutory language of Title VII, the applicable statute of limitations begins to run from the date of "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). Title VII has a dual statute of limitations. If the alleged

11

discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a "deferral state," in this case Tennessee, which has enacted its own laws prohibiting discrimination in employment, *see* Tenn. Code Ann. § 4-21-101, the plaintiff must file suit within 300 days of the alleged discriminatory act.[3] *Alexander*, 177 F.3d at 407. The alleged unlawful employment practice in this case, which the defendant claims is time-barred, did occur in Tennessee, a deferral state, and thus the 300-day period in which to file an EEOC charge under Title VII applies.[4]

In this case, it appears that the plaintiff filed her first claim with the Nashville EEOC Office within 298 days of the first time she was laid off, which was December 3, 2004. Therefore, plaintiff's claim relating to gender discrimination regarding her discharge on December 3, 2004, is not time-barred. This Court is aware that only the Miami EEOC office issued the notice of the right to sue. This Court also notes the policy "that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement." *Haithcock v. Frank*, 958 F.2d 671,

---

[3]The defendant argues that the time limit is 240 days and cites to a case which used this time limit. However, this is incorrect.

[4]The same 300-day time limit for filing a charge with the EEOC applies in age discrimination cases brought under the ADEA. 29 U.S.C. § 626(d). However, the defendant does not claim that the plaintiff's ADEA claims are time-barred.

12

675 (6th Cir. 1992) Here, the notice of the right to sue from the Miami office included the relevant period of December 3, 2004. In addition, the plaintiff's allegations contained in that charge before the Miami office included facts and her allegations surrounding her discharge from employment in Tennessee, and the Miami office asked the defendant for documents relating to this relevant period. Thus, the policy has been fulfilled in this case, and the plaintiff's Title VII claims surrounding her discharge are not time-barred.[5] Accordingly, the defendant's summary judgment motion as to the plaintiff's Title VII claims is **DENIED**.

Even if the Miami EEOC notice of the right to sue does not encompass the plaintiff's Title VII complaints relating to her December 2004 lay off, the Supreme Court announced in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id*. at 393. The Sixth Circuit recognized that "[s]ubsequent to *Zipes*, . . . every circuit presented with the issue has

---

[5] It is unclear from the plaintiff's complaint and the pleadings filed in connection with the summary judgment motion whether or not plaintiff's Title VII claim is limited to her discharge or whether she also asserts a failure to promote claim. To the extent she asserts a failure to promote claim, that claim is time-barred because plaintiff did not file the claims within the 300-day time limit. The statute of limitations on such a claim would run from the date of the alleged unlawful employment practice and the plaintiff was aware of this claim prior to her promotion to Vice President in July, 2003.

13

decided that the receipt of a right-to-sue letter prior to the filing of a Title VII action is not a jurisdictional prerequisite, but rather a precondition subject to equitable tolling and waiver." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1487 (6th Cir.1989) (citing cases). The Sixth Circuit again expressed tacit approval of the notion that *Zipes* supports the conclusion that the right-to-sue letter is nonjurisdictional in *Gilday v. Mecosta County*, 124 F.3d 760, 762 (6th Cir.1997), and that court held this explicitly in *Rivers v. Barberton Board of Education*, 143 F.3d 1029, 1031 -1032 (6th Cir. 1998).

The federal courts sparingly bestow equitable tolling. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988); *Brown v. Mead Corp.*, 646 F.2d 1163, 1165 (6th Cir. 1981). Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *see also Johnson v. United States Postal Service*, 64 F.3d 233, 238 (6th Cir.1995) (stating that a petitioner's failure to satisfy a deadline caused by "garden variety neglect" cannot be excused by equitable tolling).

The Sixth Circuit held in *Truitt v. County of Wayne*:

14

> We have identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (citation omitted).

However, the *Truitt* court did not indicate that its list was comprehensive, nor that each of the five considerations would be material in all cases. Rather, "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Id*. (citation omitted). Here, tolling would be appropriate. The plaintiff diligently pursued her rights, and she followed the instructions given to her by the EEOC. *See Brown v. Crowe*, 963 F.2d 895, 899 (6th Cir. 1992) (stating that "[u]der the circumstances [of this case], to reject the plaintiff's claim due to the bureaucratic confusion between two agencies would be manifestly unjust"). She filed the charges with both the Nashville and the Miami offices. She was not privy to their decisions in transferring and investigating the charges. Furthermore, the plaintiff included facts relating to her allegations arising from her Tennessee employment, and the right to sue letter's relevant period included the date of her discharge in Tennessee. Moreover, there is not evidence and the defendant does not argue that it failed to receive adequate notice under these circumstances to the detriment of its rights. In addition, the

15

plaintiff acted reasonably in pursuing her rights, and she should not be hampered by a procedural technicality, when the EEOC had her allegations before it in a timely fashion.

IV. **CONCLUSION**

For the reasons stated above, the defendant's Amended Motion for Summary Judgment, [Doc. 92], is **DENIED**.

So Ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
